IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HARRISON DIVISION

UNITED STATES of AMERICA                                              PLAINTIFF/RESPONDENT


V.                           No.   3:04-CR-30009
                             No.   3:08-CV-03032

CLIFFORD LEE GRAYSON, JR.                                              DEFENDANT/PETITIONER

### MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Before the undersigned for report and recommendation is the petitioner's Habeas Corpus Petitions (Doc. 46) filed June 30, 2008 and his Supplement (Doc. 48) filed July 29, 2008 under 28 U.S.C. Section 2255.  The Government filed its Response (Doc. 49) on July 31, 2008 and the Petitioner has not filed a Reply.

### I.  Background:

On November 18, 2004, the Petitioner was named in a one-count Indictment in the Western District of Arkansas, Harrison Division. (Docket # 1) The one-count Indictment charged that on or about September 17, 2004, the defendant having been convicted of Conspiracy to possess with intent to distribute cocaine and cocaine base, and unlawful possession of ammunition by a convicted felon, in the United States District Court for the Western District of North Carolina on March 8, 2004, a crime punishable by imprisonment for a term exceeding one year, possessed a firearm, a Smith and Wesson .38 caliber revolver, serial number C991867, which had been previously shipped in interstate commerce, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). *Id.*

On July 24, 2006, the Petitioner appeared for arraignment before the Honorable Beverly R. Stites Jones, U.S. Magistrate Judge, in Fayetteville. Assistant Federal Public Defender James Pierce was appointed counsel. (Docket ## 3, 5-6)

On October 24, 2006, Petitioner appeared with James Pierce before the Honorable Jimm Larry Hendren, Chief U.S. District Judge, in Harrison for a change of plea. A written plea agreement was presented wherein defendant would plead guilty to the Indictment and in return the government agreed not to recommend a specific sentence and not to object to a reduction for acceptance of responsibility. Defendant's rights were explained to him and the penalties were set forth. The court expressed tentative approval of the plea agreement. A factual basis was set forth to which defendant agreed. He then formally entered a plea of guilty to the Indictment. The court accepted defendant's plea and ordered a presentence report. Defendant was remanded to custody. (Docket ## 33-34; Plea Hrg. Transcript)

On February 6, 2007, the Probation Office issued Petitioner's Pre-Sentence Report (PSR). The PSR assessed a base offense level of 20. (PSR ¶ 16) The PSR gave Petitioner a 2-point reduction for acceptance of responsibility (PSR ¶ 22) and a 1-point reduction upon a motion from the government for qualifying for a decrease in subsection (a) and meets the criteria set forth at § 3E1.1(b) resulting in a Total Offense level of 17. (PSR ¶¶ 23, 24) Petitioner was assessed sixteen points of criminal history, putting him in criminal history category VI. (PSR ¶ 37) The resulting advisory guideline range was 51 to 63 months. (PSR ¶ 54) The United States advised that it had no objection to the PSR. Petitioner advised through his attorney of record, James Pierce, that the defendant had objections to the presentence report. In the first objection, the defendant objected to paragraph 8 in that he came to Arkansas to sell some equipment to

generate funds to support his family. He denied that he physically moved the gun in question or ever touched the weapon. He admitted that the items in the truck belonged to him but denied that the gun and ammunition belonged to him. In objections two, three and four, the defendant objected to paragraphs 29, 30, 31 in that he contended he was unfamiliar with those convictions and therefore objected to them being counted. In objection five, Petitioner objected to paragraph 33 in that it included a conviction which he did not believe should have been counted pursuant to Section §4A1.2 of the guidelines. In objection number six, Petitioner objected to paragraph 35 in regards to the assessment of +2 criminal history points per §4A1.1(d). In objection seven, Petitioner objected to paragraph 36 in regards to the assessment of +1 criminal history point per §4A1.1(e). (*See* PSR addendum dated February 27, 2007)

On March 8, 2007, the United States filed a Motion for Downward Departure Pursuant to U.S.S.G. § 5K1.1 and 18 U.S.C. § 3553(e). (Docket # 36) The United States recommended a two level reduction in the guideline calculation which would reduce the total offense level to 15 with a Sentencing Guideline range of 41 to 51 months. *Id*.

On March 9, 2007, Petitioner appeared for sentencing. The District Court sentenced Petitioner to a sentence of 41months imprisonment, three years supervised release, $2,000.00 fine with interest waived, and $100 special assessment. (Docket ## 37-38)

On March 19, 2007, Petitioner filed a Notice of Appeal. (Docket ## 39-40). The Federal Public Defender was appointed to represent Petitioner before the Eighth Circuit Court of Appeals. (Docket # 41) In his appeal, Petitioner argued (1) the district court incorrectly calculated the Guidelines range by assessing criminal history points for Petitioner's August 2005 conviction for failing to surrender; (2) the case should be remanded for resentencing because the

court conflated its departure analysis with its variance analysis; and (3) the presumption of reasonableness this court affords to a within-Guidelines-range sentence is improper. (*United States v. Grayson*, 2008 WL 269132 (8th Cir., February 1, 2008)(unpublished opinion) The Eighth Circuit Court of Appeals affirmed, finding that the first issue raised was moot because Petitioner would be in a criminal history category VI regardless. It concluded that any error the Sentencing Court may have committed in conducting its departure and variance analysis was harmless and that the Supreme Court approved the appellate presumption of reasonableness to within-Guidelines-range sentences in *Rita v. United States*, __ U.S. __, 127 S.Ct. 2456 (2007). *Id.* (Docket # 44)

On June 30, 2008, Petitioner filed his Motion to Vacate under 28 U.S.C. § 2255. (Docket #46) Petitioner claims that his counsel was ineffective in three areas:

(1) Petitioner contends that when he was sentenced on the Arkansas federal charge, he was already serving a 42 month sentence on a North Carolina conviction. Petitioner contends that he was told by his counsel, the AUSA and the U.S. Marshal that his North Carolina sentence ended on March 20, 2007 when in fact he had 19 months remaining on the North Carolina sentence; (2) Petitioner contends the his counsel failed to make sure that he received credit on his Arkansas federal sentence for the time (9 months) that he spent in jail in Arkansas waiting sentencing; and (3) Petitioner contends that his counsel and the AUSA advised him that the 41 month Arkansas federal sentence would run concurrently with his 42 month North Carolina sentence if he pled guilty. He contends he only pled guilty because the sentences were to run concurrently when, in fact, they ran consecutively.

On July 29, 2008, Petitioner filed his Supplement to his 2255 Motion. (Docket # 48)

## II.  Discussion

### Ineffective Assistance of Counsel

A defendant "faces a heavy burden" to establish ineffective assistance of counsel pursuant to section 2255. *DeRoo v. United States*, 223 F.3d 919, 925 (8th Cir. 2000). To establish a claim of ineffective assistance of counsel, Petitioner must satisfy the two-part test set forth in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). First, under the "deficient performance" component, he must show that his counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed [him] by the Sixth Amendment." *Strickland*, 466 U.S. at 687. Second, under the "prejudice" component, he must demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. see also, i.e. *United States v. Ledezma-Rodriguez*, 423 F.3d 830, 836 (8th Cir. 2005)(post-conviction relief will not be granted on a claim of ineffective assistance of trial counsel unless the petitioner can show not only that counsel's performance was deficient but also that such deficient performance prejudiced his defense) Also, to the extent that Petitioner's claims arise out the plea process, he must show a reasonable probability that, but for counsel's errors, he would not have pled guilty and would have insisted on going to trial. See *Strickland*, 466 U.S. at 688; *United States v. Prior*, 107 F.3d 654, 661 (8th Cir. 1997)

The "deficient performance" prong of the two-part Strickland test requires the movant to "show that his 'counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *United States v. Rice*, 449 F.3d 887, 897 (8th Cir. 2006) (quoting Strickland, 466 U.S. at 687) That showing can be made by

demonstrating that counsel's performance "fell below an objective standard of reasonableness." *Wiggins v. Smith*, 539 U.S. 510, 522, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003)(internal citations omitted) There are two substantial impediments to making such a showing, however. First, "[s]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Rice*, 449 F.3d at 897 (quoting *Strickland*, 466 U.S. at 690, 104 S.Ct. 2052). Second, "[t]here is a 'strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" Id. (quoting Strickland, 466 U.S. at 689, 104 S.Ct. 2052); *Davis v. Norris*, 423 F.3d 868, 877 (8th Cir. 2005)("To satisfy this prong [the movant] must overcome the strong presumption that his counsel's conduct fell within the wide range of reasonable professional assistance."). If the movant fails to show deficient performance by counsel, the court need proceed no further in its analysis of an "ineffective assistance" claim. *United States v. Walker*, 324 F.3d 1032, 1040 (8th Cir. 2003).

Even if counsel's performance was deficient, the movant must also establish "prejudice" to overcome the presumption of reasonable professional assistance. *Ledezma-Rodriguez*, 423 F.3d at 836; *Davis*, 423 F.3d at 877. To satisfy this "prejudice" prong, Petitioner must show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different...a reasonable probability [meaning] a probability sufficient to undermine confidence in the outcome." *Rice*, 449 F.3d at 897 (internal quotations omitted) Thus, it is not sufficient for a defendant to show that the error had some "conceivable effect" on the result of the proceeding because not every error that influences a proceeding undermines the reliability of the outcome of the proceeding. *Morales v. Ault*, 476 F.3d 545 (8th Cir. 2007)(*citing Odem v. Hopkins*, 382 F.3d 846, 851 (8th Cir. 2004)) Although the two prongs

of the "ineffective assistance" analysis are described as sequential, courts "do not ... need to address the performance prong if petitioner does not affirmatively prove prejudice." *Boysiewick v. Schriro*, 179 F.3d 616, 620 (8th Cir.1999)

### *A. Issue Concerning When Previous Sentence Concluded*

The Petitioner contends that: "On 3/09/07, I received a 41 month sentence on an Arkansas conviction. At that time I was already serving a 42 month sentence on a N.C. conviction. At the time of the Arkansas sentencing, the Court was given the incorrect information by my attorney, the AUSA, and U.S. Marshal that my N.C. sentence ended 3/20/07. This gave the Court the erroneous impression that my N.C. sentence was over in 11 days rather than the 19 months I had remaining on my N.C. sentence. Accordingly, my door date is 8/01/11." (Docket # 46, ¶ 12(A))

It appears that the Petitioner was originally convicted in the Western District of North Carolina on March 8, 2004, sentenced to the Bureau of Prisons to 42 months and ordered to surrender on September 14, 2004. The Petitioner failed to surrender as ordered and was apprehended in the Western District of Arkansas on September 17, 2004. On September 2, 2005 the Petitioner was sentenced in the Western District of North Carolina to "TWELVE (12) MONTHS to run consecutively with 3:02CR199-03". (Doc. 49, Attachment #1)

At the time of the Petitioner's arrest in Arkansas on the North Carolina failure to appear warrant a Smith & Wesson .38 caliber revolver was discovered inside the console of the vehicle. Also discovered was a plastic bag containing personal belonging of the Petitioner, which included a box of Winchester .38 caliber ammunition. As a result the Petitioner was ultimately charged with being a felon in possession of a firearm in the Western District of Arkansas on

November 18, 2004. (Doc. 1) The Petitioner entered a plea (Doc. 24) on October 24, 2006 and judgment was pronounced after a sentencing hearing on the Arkansas case on March 9, 2007. (Doc. 37)

The Petitioner was sentenced to 41 months imprisonment, 3 years supervised release, $2000.00 fine and $100 special assessment and judgment (Doc. 38) was entered on March 13, 2007. If there was any confusion at the Petitioner's sentencing hearing it was of his own making. The court called the Petitioner's attention to the fact of the Petitioner's original sentence of 42 months from North Carolina and that he had received an additional sentence of twelve months that ran **consecutively** to the original sentence.

The following exchange occurred between the Petitioner and the court at the Sentencing Hearing on March 9, 2007:

> THE COURT: Thank you, sir. Mr. Grayson, you said one thing I'm curious about. You said you just finished up with forty-two months.
> THE DEFENDANT: I'm sorry, sir?
> THE COURT: You said you were just finishing up forty-two months. Is that right?
> THE DEFENDANT: A forty-two month sentence, sir, at March the 20th.
> THE COURT: And that's in connection with the conspiracy, right?
> THE DEFENDANT: That's everything. That's about --that cleans my record.
> THE COURT: Well, according to what I had understood here, you had been sentenced to forty-two months, and you failed to surrender for that back on September the 14th of 2004. Is that right?
> THE DEFENDANT: No, sir. Yes, sir, but what I meant was –
> THE COURT: Well, let me ask, is that correct?
> THE DEFENDANT: Okay, ask me again, sir.

-8-

> THE COURT: You had been sentenced to forty-two months in prison and were supposed to have surrendered to serve that on September the 14th, 2004?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: And you didn't surrender?
>
> THE DEFENDANT: No, sir. I was -- I was on the way, sir.
>
> THE COURT: Okay, but you didn't. Thereafter, according to my report here, that I've approved here, after you didn't -- you failed to surrender, you went back there, and you were sentenced to twelve months for that failure.
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: And that was to be consecutive to the forty-two months?
>
> THE DEFENDANT: Yes, sir, but that went in -- sir, that went from August -- see, that --that overlaps. In other words, they couldn't take them -- my one-year sentence back to September 17th when I got arrested. They could take the one-year sentence back to August when I -- when I got my time for that sentence. That's how it can overlap. That's what they told me. That's why both charges are combined like that. That's why --everything I've got -- everything is cleared March the 20th, 2007. The failure to report, the drug -- the drug thing, the bullet, everything is done March 20th. Even though I got arrested out here September 17th, they took it back to August on the twelve-month sentence. (Sentencing Tr. 72-74)

Petitioner's Counsel reported to the Court that the Marshal's office had assured him that all of their documentation shows that Petitioner would be released on March 20 if not for the charges pending in Arkansas. (Sentencing Tr. 74) However, the Court stated that what mattered was the sentencing court's intention in North Carolina, and Petitioner's Counsel stated that he was "a little bit confused as well." (Sentencing Tr. 74-75)

The Bureau of Prisons has exclusive authority to compute proper credit for time served and to determine the amount of time to be served pursuant to criminal judgments. The "exclusive

remedy for challenging the BOP's calculation of a federal sentence is a habeas corpus petition filed pursuant to 28 U.S.C. § 2241, directed to the United States District Court wherein the petitioner is incarcerated, and naming the warden of the federal facility as a respondent." *Rios v. Wiley*, 201 F.3d 257 (3rd Cir. 2000) Counsel's computation of sentences for the purposes of this pleading are only estimates for the purpose of this litigation and are not binding upon the Bureau of Prisons.

Petitioner benefitted from the plea. The United States agreed that it would not object to acceptance of responsibility, and the United States moved for the third level adjustment for acceptance of responsibility. (Plea Agreement ¶ 15) In addition, the United States filed a 5K1.1 Motion which resulted in a decrease of 2 levels.

Counsel was not ineffective and did not give bad sentencing advice for engineering a Plea Agreement on Petitioner's behalf which contained provisions which directly benefitted Petitioner. A defendant bears the burden of showing that counsel's actions were not sound strategy, *United States v. Hill*, 864 F.2d 601 (8th Cir. 1988), and Petitioner has not shown that counsel's advising him to accept a plea was not sound strategy. Counsel was well aware that judicial fact-finding based upon a preponderance of the evidence standard remains permissible in sentencing even after *Booker*, provided that the guidelines are applied in an advisory manner. *United States v. Wade*, 435 F.3d 829, 831 (8th Cir. 2006) (per curiam); *see also United States v. Pirani*, 406 F.3d 543, 551 n. 4 (8th Cir. 2005) (*en banc*)("Nothing in *Booker* suggests that sentencing judges are required to find sentence-enhancing facts beyond a reasonable doubt under the advisory Guidelines regime."); *United States v. Haack*, 403 F.3d 997, 1003 (8th Cir. 2005) ("In determining the appropriate guidelines sentencing range to be considered as a factor under

[18 U.S.C.] § 3553(a), we see nothing in Booker that would require the court to determine the sentence in any manner other than the way the sentence would have been determined pre-*Booker*."). Defense counsel's advice and performance did not fall "below an objective standard of reasonableness" and that, consequently, Petitioner cannot establish a valid claim of having received either deficient performance or actual prejudice under Strickland. *See also, i.e. Williams v. United States*, 343 F.3d 927 (8th Cir. 2003) (reasonable strategy to advise defendant to maintain guilty plea because doing so benefitted defendant by limiting his sentencing range); *United States v. Granados*, 168 F.3d 343, 345 (8th Cir. 1999)("the law in this circuit is clear that a defendant who pleads guilty has no right to be apprised of the sentencing options outside the statutory maximum and minimum sentences.").

  Misinformation presented at sentencing alone does not justify relief pursuant to § 2255. See, *United States v. Blackwell*, 127 F.3d 947, 953-54 (10th Cir. 1997) Only where the misinformation resulted in a "complete miscarriage of justice" is a petitioner entitled to relief. *Id.* The fact that a defendant, such as Petitioner, is sentenced at the bottom of the guideline range after reflecting a reduction for acceptance of responsibility and a departure for substantial assistance is a consideration which rebuts any argument that the defendant is prejudiced by such misinformation. *Id.* at 954.  A mere allegation by a defendant that he would have insisted on going to trial is insufficient to establish prejudice. *Id*. at 633, citing *Key v. United States*, 806 F2d 133, 139 (7th Cir. 1986).

  It is clear from the record that the court did not think that the Petitioner would be released in a few days from the North Carolina sentence and fully understood that the North Carolina court had added twelve months to the Petitioner's previously imposed sentence.

*B. Issue Concerning Credit for Jail Time*

For his second ground, Petitioner alleges: "My counsel failed to make sure that I received credit on my Arkansas sentence for the time (9 months) that I spent in jail in Arkansas awaiting sentencing on my Arkansas conviction." (Docket # 46, ¶ 12(B))

The Bureau of Prisons acting on behalf of the Attorney General has the authority to compute credit after a defendant has begun to serve his sentence. *United States v. Wilson*, 503 U.S. 329, 335-36 (1992) The sentencing court does not compute the sentence because the computation of the credit must occur after the defendant begins his sentence. *Id.* at 334

Petitioner's counsel at sentencing could not require the Court to give Petitioner credit for the time that he spent in jail in Arkansas awaiting sentencing since that determination is made later by the Attorney General acting through the Bureau of Prisons. The Court recognized the proper

procedure during the sentencing hearing and stated that it had no objection to Petitioner receiving credit for time served in connection with the North Carolina matters if so determined by the Bureau of Prison. (Sentencing Tr. 91)

*C. Issue Concerning Whether Sentence Would Be Concurrent*

For his third ground, Petitioner alleges: "I was advised by my counsel and the AUSA that the 41 month sentence (Arkansas) would run concurrently with my 42 month N.C. sentence provided that I plead [sic] guilty. This information was clearly incorrect. I only agreed to plea because the sentences were to run concurrently and not consecutively." (Docket # 46, ¶ 12(C))

The Judgement entered does not reflect whether it is concurrent or consecutive with any other sentence. (Docket # 38, p. 2) However, pursuant to 18 U.S.C.A. §3584(a), multiple terms

of imprisonment imposed at different times run consecutively unless the court orders that the terms are to run concurrently.

The transcript of the plea hearing, along with the Plea Agreement, establishes there was no agreement made with the United States that the sentence would be imposed concurrently with previously imposed sentences.

The record contradicts the Petitioner's assertion that he would have only pleaded guilty if the court was going to run the sentences concurrently.

Petitioner's counsel argued at the sentencing hearing for the Court to use its discretion and fashion a sentence which gave credit for time served on the North Carolina charges or to run concurrently. (Sentencing Tr. 65-66) AUSA Plumlee told the Court that he had spoken with the U.S. Attorney in North Carolina about allowing the Arkansas case to be transferred to North Carolina pursuant to Rule 20, Federal Rules of Criminal Procedure, since there was also a "flight charge" pending in North Carolina. AUSA Plumlee stated that those sentences might be run concurrently in North Carolina but that he never heard back from North Carolina. (Sentencing Tr. 67-68) In response to defense counsel's argument, AUSA Plumlee stated that he was unclear whether the Court had discretion "to order that he get credit from a sentence from another jurisdiction." He also stated that it was his experience that the Bureau of Prisons has their own interpretations of some of the laws. (Sentencing Tr. 69) Defense Counsel then argued that the Court did have authority to fashion a sentence as set forth by Counsel. (Sentencing Tr. 69-70) Petitioner's counsel requested to the Sentencing Court to use its discretion and impose a sentence which was concurrent with the North Carolina sentences. (Sentencing Tr. 63-66) Petitioner personally asked the Sentencing Court to run the sentence concurrent with the North Carolina

sentences or time served. (Sentencing Tr. 72) Although, he spoke directly to the Court during the sentencing concerning the requested concurrent sentence, he never contended that the United States had agreed to a concurrent sentence until he filed this motion pursuant to § 2255. The Sentencing Court considered whether the Arkansas sentence should be run concurrently and discussed § 5G1.3. (Sentencing Tr. 82) The Court decided that the Arkansas sentence should run consecutive with the North Carolina sentences. (Sentencing Tr. 83) The Court did not agree that it would be proper to fashion a sentence as requested by Petitioner. The Court stated that it was not convinced this was something that would warrant fashioning a sentence that was outside the recommended guidelines. (Sentencing Tr. 81) The Court stated that to do so would turn the sentencing regime "on its head." (Sentencing Tr. 82) The Court also noted § 5G1.3 provided that a sentence should be consecutive "when the instant offense was committed while the defendant was serving an undischarged term of imprisonment or after sentencing for, but before commencing service of such a term of imprisonment." (Sentencing Tr. 82-83) The Court stated that there was no way to "legitimately award a sentence that would be back-dated, as was I think mentioned, or that would somehow run concurrently." (Sentencing Tr. 84) The Court also mentioned that with guidelines in the range of forty-one to fifty-one months it did not see how it was possible to run a sentence concurrently that was to run only a matter of days. *Id*.

  Immediately after imposing sentence and advising Petitioner of his appeal rights, the Court made the following comments concerning the sentence imposed upon Petitioner:

> THE COURT: All right. Now, let me state, Mr. Petitioner and Mr. Pierce, I make no comment about whether Mr. Petitioner should be given credit for time served in connection with these other matters. I will state on the record that the Court has no objection to that if that is properly determined by the Bureau of Prison

>officials. I'm not making any comment about it because as I've already said, I don't perceive any basis for the Court to award a sentence other than what is so awarded, but I will state on the record -- if you object to it, Mr. Plumlee, you may do so -- but I'll state that if it is determined by those authorities that such credit is appropriate, then this Court has no objection to it.
>
>   Now, Mr. Grayson, don't misunderstand that. I'm not implying in any way that there is. I don't know. It has been argued here, and I didn't quite understand, and I still don't quite understand what happened with that forty-two months and that twelve months, and so I'll just state that for whatever help it might be to you.
>(Sentencing Tr. 91)

At the plea hearing, Petitioner was asked several questions by the Court concerning the plea agreement. They included the following:

>THE COURT: Did you read the agreement before you signed it?
>THE DEFENDANT: Yes, sir.
>THE COURT: And did you discuss it thoroughly with Mr. Pierce?
>THE DEFENDANT: Yes, sir.
>THE COURT: Did anyone threaten you or try to force you to sign this agreement?
>THE DEFENDANT: No, sir.
>THE COURT: And you signed it voluntarily?
>THE DEFENDANT: Yes, sir.
>THE COURT: And you acted on the advice of your lawyer?
>THE DEFENDANT: Yes, sir.
>THE COURT: Is the agreement complete? Does it have everything in it that you believe
>you've agreed to with the Government about this matter?
>THE DEFENDANT: Yes, sir.
>THE COURT: Got everything in it, okay. Has anyone promised you, Mr. Grayson, that

>if you plead guilty and sign this Plea Agreement that you would get no punishment at all
>or that your punishment would be less than what the law might require?
>THE DEFENDANT: No, sir.
>THE COURT: Do you understand, sir, that it will be up to me to determine a proper
>sentence for you in light of the law that applies, and the guidelines and other matters?
>THE DEFENDANT: Yes, sir.
>(Plea Hrg. Tr. 4-5)

The transcript of the plea hearing, along with the Plea Agreement, establishes there was no agreement made with the United States that the sentence would be imposed concurrently with previously imposed sentences.

**Evidentiary Hearing**

Finally, Petitioner does not state grounds sufficient to require an evidentiary hearing. An evidentiary hearing on a § 2255 motion must be granted unless the motion, files and records of the case establish conclusively that the petitioner is not entitled to relief. *Kingsberry v. United States*, 202 F.3d 1030, 1032 (8th Cir. 2000) A § 2255 motion can be dismissed without a hearing if (1) the petitioner's allegations, accepted as true, would not entitle the petitioner to relief, or (2) the allegations cannot be accepted as true because they are contradicted by the record, inherently incredible or conclusions rather than statements of fact. *Delgado v. United States*, 162 F.3d 981, 983 (8th Cir.1998)

The court finds that the record of the case does establish conclusively that the Petitioner is not entitled to an Evidentiary Hearing.

### III. Conclusion

Based upon the forgoing I recommend that the instant motion, filed under 28 U.S.C. Section 2255, be dismissed with prejudice.

**The parties have ten days from receipt of this report and recommendation in which to file written objections pursuant to 28 U.S.C. Section 636(b)(1).  The failure to file timely written objections may result in waiver of the right to appeal questions of fact.  The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

Dated this 1st day of November 2008

          /s/ J. Marschewski
          HONORABLE JAMES R. MARSCHEWSKI
          UNITED STATES MAGISTRATE JUDGE